COURT OF APPEALS
DECISION
DATED AND FILED

June 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2230-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CT1137

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PETER JOSEPH IDELL,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: KORI L. ASHLEY and RAPHAEL F. RAMOS, Judges. *Affirmed*.

¶1 COLÓN, J.[1] Peter Joseph Idell appeals from a judgment of conviction for operating while intoxicated (OWI) as a second offense and an order

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

denying Idell's postconviction motion for relief without a hearing.[2]   For the reasons set forth below, this court affirms.

## BACKGROUND

¶2      On March 31, 2019, at approximately 7:41 p.m., Officer Lete Carlson stopped Idell on the 800 block of South 87th Street in West Allis upon observing that Idell was driving a vehicle with expired license plates.   Officer Carlson had a brief conversation with Idell, the only occupant of the vehicle, during which she detected an odor of intoxicants.   In fact, the criminal complaint alleged that Officer Carlson "detected a strong odor of intoxicants from [Idell's] breath as well as [she] observed [Idell] to have slurred speech and red glassy eyes."

¶3      After obtaining Idell's information, Officer Carlson returned to her squad car and radioed for backup to conduct an OWI investigation.   She also checked Idell's license and registration and discovered that Idell had a prior OWI from 2009.   Officer Carlson spent approximately twelve minutes waiting in her squad car for backup, and Officer Carlson never wrote a citation for expired license plates.

¶4      Officer Jacob Roth, a police officer in training, arrived as backup. Officer Carlson informed Officer Roth that she detected an odor of intoxicants, and Officer Roth approached Idell in his vehicle.   Officer Roth observed that Idell smelled of alcohol, had bloodshot and glassy eyes, and slurred speech.   Idell

---

[2] The Honorable Kori L. Ashley entered the judgment of conviction.   The Honorable Raphael F. Ramos entered the order denying Idell's postconviction motion.   For ease of reference, we refer to both as the circuit court.

admitted to having consumed wine earlier that afternoon and also within the 30 to 40 minutes prior to the stop. Officer Roth conducted field sobriety tests and placed Idell under arrest for OWI. A blood draw indicated that Idell had a BAC of 0.146. Thus, the State charged Idell with one count of OWI second and one count of operating with a prohibited blood alcohol concentration, also as a second offense.

¶5 Idell filed a motion to suppress in which he argued that the stop was unlawfully extended by Officer Roth to conduct field sobriety tests. At a hearing on Idell's motion to suppress, the State presented Officer Roth's testimony and body camera footage as evidence in support of the stop. Idell additionally presented Officer Carlson's body camera footage of the stop during cross-examination. Officer Carlson did not testify.

¶6 The circuit court ultimately denied the motion, finding that the prior OWI, odor of intoxicants, possibly glassy eyes, and admission to drinking multiple glasses of wine was sufficient to establish reasonable suspicion to conduct the field sobriety tests. However, the circuit court further found that, after watching the body camera footage, it "did not note bloodshot eyes" and "was not able to confirm or deny" that Idell had glassy eyes. The circuit court further stated that Officer Carlson had a "coherent" conversation with Idell and "that there were no other real signs of potential impairment." Idell subsequently pled guilty to OWI second.

¶7 Idell filed a motion for postconviction relief in which he argued that Officer Carlson unlawfully extended the stop to conduct an OWI investigation and trial counsel was ineffective for failing to pursue this line of argument in the motion to suppress. The circuit court denied Idell's motion, without a hearing. In

a written decision, the circuit court found that Officer Carlson did not unlawfully extend the stop when she waited approximately twelve minutes for backup and that the extension was supported by reasonable suspicion based on the odor of intoxicants and Idell's prior OWI. The circuit court stated that the odor of intoxicants and knowledge of a prior OWI warranted additional investigation. Therefore, the circuit court denied the motion because trial counsel could not be ineffective for failing to pursue a meritless motion.

¶8 Idell appeals. Additional relevant facts will be noted as necessary.

## DISCUSSION

¶9 On appeal, Idell argues that Officer Carlson unlawfully extended the traffic stop, and he argues that he received ineffective assistance of counsel when trial counsel failed to raise the issue of the unlawful extension of the traffic stop by Officer Carlson.

¶10 A traffic stop may be extended for additional investigation "[i]f … the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place." *State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999). "[T]he legality of the extension of the traffic stop in this case turns on the presence of factors which, in the aggregate, amount to reasonable suspicion that [the defendant] committed a crime the investigation of which would be furthered by the defendant's performance of field sobriety tests." *State v. Hogan*, 2015 WI 76, ¶37, 364 Wis. 2d 167, 868 N.W.2d 124.

¶11    "The question of what constitutes reasonableness is a common sense test.  What would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996) (citation omitted).  "The reasonableness of a stop is determined based on the totality of the facts and circumstances." *State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634.  This court reviews de novo whether the facts establish reasonable suspicion justifying an extension of the stop.  *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394.

¶12    Idell argues that Officer Carlson lacked facts upon which to base a reasonable suspicion to extend the stop to conduct an OWI investigation.  In particular, Idell argues that the facts establishing reasonable suspicion are limited to an odor of intoxicants and knowledge of a prior OWI from 2009 and, taken together, these facts are not enough to establish reasonable suspicion.[3]  He further emphasizes that he was stopped, not for any bad, suspicious, or erratic driving, but for expired license plates.

¶13    This court concludes that the odor of intoxicants coming from Idell as the sole occupant of the vehicle and knowledge of a prior OWI was sufficient to

---

[3] This court questions whether the facts to consider are so limited.  Indeed, the parties note that Officer Carlson in this instance can be seen on the body camera footage stating:

> I would have taken [the OWI investigation] but I literally have
> two I'm like avoiding like the plague right now.  Just don't feel
> like writing them.  They're like all ready to go downtown and
> I'm just like, meh, I'd rather drive around.

While this statement displays less than desirable police work, this court nonetheless takes this as an indication that Officer Carlson did in fact observe several OWI indicators when she spoke with Idell.  Officer Carlson clearly would have preferred to avoid an OWI investigation if there was a way to ignore any OWI indicators and allow Idell to return home.

establish reasonable suspicion to conduct an OWI investigation when Officer Carlson pulled Idell over on a Sunday night for illegally driving with expired license plates.

¶14    Idell cites to several unpublished cases for their persuasive value in support of his position that Officer Carlson lacked reasonable suspicion in this case to extend the stop to conduct an OWI investigation.  *State v. Gonzalez*, No. 2013AP2585-CR, unpublished slip op. (WI App May 8, 2014); *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. (WI App Nov. 24, 2010); *State v. Meye*, No. 2010AP336-CR, unpublished slip op. (WI App July 14, 2010).[4] Collectively, he contends that these cases generally stand for the proposition that the odor of intoxicants and one other suspicious factor are insufficient to establish reasonable suspicion particularly in the absence of bad, suspicious, or erratic driving.  This court finds Idell's reliance on these cases unpersuasive.

¶15    While two of the cases Idell cites address scenarios where the officers witnessed no bad, suspicious, or erratic driving from the defendants, the factual scenarios there also involved parked vehicles where the officers made contact with the defendants while the vehicles were parked.  *Leon*, No. 2010AP1593, ¶¶17-20; *Meye*, No. 2010AP336-CR, ¶¶2-3.  In one of these cases, the officer also could not identify whether the defendant or the defendant's passenger smelled of alcohol.  *Meye*, No. 2010AP336-CR, ¶2.  By contrast in this case, Officer Carlson witnessed Idell illegally driving a vehicle with expired

---

[4] Pursuant to WIS. STAT. RULE 809.23(3)(b), an unpublished opinion issued on or after July 1, 2009, authored by a single judge may be cited for its persuasive value.  However, "[b]ecause an unpublished opinion cited for its persuasive value is not precedent, it is not binding on any court of this state," and "[a] court need not distinguish or otherwise discuss an unpublished opinion."

license plates, and Idell was the sole occupant of the vehicle and only possible source of any odor of intoxicants.

¶16    In the third case that Idell cites, the court noted that the circuit court erroneously included facts gathered during the field sobriety tests in its analysis of reasonable suspicion to conduct those tests, and the court concluded that, upon removing those erroneously included facts, there were not enough facts left to establish reasonable suspicion. *Gonzalez*, No. 2013AP2585-CR, ¶¶11, 17. The remaining facts included that the officer detected an odor of intoxicants and the driver indicated that she had been transporting passengers who had been drinking. *Id.*, ¶¶5, 11. The officer further testified at a hearing on the motion to suppress that he did not recall slurred speech, red eyes, or any other indications that the defendant was intoxicated, and the only indicator that the officer acted on was the odor of intoxicants. *Id.*, ¶4.

¶17    Acknowledging that the facts here are themselves a close call, Idell's case does not present the same situation where the circuit court erroneously included facts in its analysis or where there was officer testimony that the only reason for extending the stop was an odor of intoxicants. Officer Carlson's reasonable suspicion in this instance was based on an odor of intoxicants appearing to emanate from Idell as the sole occupant of the vehicle, with no additional explanation that the source of the odor was anyone other than Idell, and Officer Carlson's discovery that Idell had a prior OWI. Based on her training and experience, Officer Carlson believed an investigation for an OWI was necessary to ensure that Idell could safely operate the vehicle.

¶18    Idell further argues that the only two facts serving as the basis of reasonable suspicion are mitigated because Officer Carlson noticed only a "light"

odor of intoxicants and Idell's prior OWI was nearly ten years old. This court disagrees that either of these facts should be considered mitigated.

¶19 Officer Carlson never testified in this case to describe the strength, or lack thereof, of the odor of intoxicants that she detected. Rather this indication that the odor was "light" comes not from Officer Carlson's description but from Officer Roth's testimony at the suppression hearing. Instead, the only indication in the record of the strength of the odor detected by Officer Carlson comes from the criminal complaint where it states that Officer Carlson detected a strong odor. This court, thus, does not accept that this factor should be mitigated because the odor of intoxicants detected by Officer Carlson was "light."

¶20 Idell additionally provides no case law supporting his argument that a prior OWI should be discounted based on its age. Rather, the case law supports that prior OWIs can subject a defendant to a lower legal limit where any odor of alcohol can support reasonable suspicion. *See State v. Adell*, 2021 WI App 72, ¶¶21-22, 399 Wis. 2d 399, 966 N.W.2d 115; *see also State v. Goss*, 2011 WI 104, ¶2, 338 Wis. 2d 72, 806 N.W.2d 918. While no evidence in the record supports that Idell was subject to a lower legal limit as a result of prior OWIs, Idell's prior OWI nonetheless was not mitigated because of its age, and was a proper factor to be considered in establishing reasonable suspicion. *See State v. Lange*, 2009 WI 49, ¶33, 317 Wis. 2d 383, 766 N.W.2d 551 (stating that an officer could consider evidence of a prior conviction for OWI in determining whether the officer had probable cause to arrest).

¶21 "The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his or her shoulders and thus possibly allow a crime to occur or a criminal to

escape." ***State v. Waldner***, 206 Wis. 2d 51, 59, 556 N.W.2d 681 (1996). "The law of investigative stops allow police officers to stop a person when they have less than probable cause." ***Id.*** Thus, this court concludes that the odor of intoxicants coming from Idell as the sole occupant of the vehicle and knowledge of a prior OWI are facts giving rise to a reasonable suspicion that warranted additional investigation by Officer Carlson when she stopped Idell on a Sunday night for illegally driving with expired license plates.

¶22 As a result of this court's conclusion that Officer Carlson possessed reasonable suspicion to extend the stop, this court does not address the additional argument that the twelve-minute delay for a stop related to expired license plates was unreasonable. *See **State v. Davis***, 2021 WI App 65, ¶24, 399 Wis. 2d 354, 965 N.W.2d 84 ("[U]nless reasonable suspicion develops to support such inquiries, they cannot prolong the duration of the stop beyond the time that it reasonably should take to complete the mission."). The argument as to the reasonableness of the delay in this case rests on the premise that the stop was for expired license plates, and having concluded that Officer Carlson had reasonable suspicion to extend the stop to conduct an OWI investigation, this court need not address the reasonableness of the twelve-minute delay in relation to a stop for expired license plates. *See **id.***, ¶17 n.6. However, for the sake of completeness, this court recognizes that a twelve-minute delay in light of the conversion of the stop from one for expired license plates to one for an OWI is likely reasonable because waiting for backup to conduct the investigation is standard procedure for a stop for an OWI. *See **id.***, ¶24 (noting that the duration of the stop is determined based on "the time that it reasonably should take to complete the mission").

¶23 Having established that Officer Carlson had reasonable suspicion to extend the stop to conduct an OWI investigation, this court further concludes that

trial counsel was not ineffective for failing to pursue this line of argument below. "It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments." *State v. Christopher Joseph Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. Consequently, the circuit court did not erroneously exercise its discretion when it denied Idell's motion without a hearing, and this court affirms. *See State v. John Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

## CONCLUSION

¶24 In sum, this court concludes that Officer Carlson possessed reasonable suspicion to extend Idell's traffic stop for expired plates to one for an OWI investigation, and therefore, this court affirms.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.