COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1916-CR**

Cir. Ct. No. **2011CF4754**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES RICHARD COLEMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Brash, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  James Richard Coleman appeals the judgment of conviction entered following his jury trial for two counts of second-degree sexual assault.  He also appeals the order of the trial court denying his motion for postconviction relief.  For the reasons set forth below, we affirm.

## BACKGROUND

¶2    Coleman was charged with two counts of second-degree sexual assault of a child on October 4, 2011.  Coleman had been living with his cousin, F.M., and F.M.'s family, and the charges were based on allegations that Coleman had assaulted F.M.'s thirteen-year-old daughter, C.B., on two occasions in September 2011, when Coleman was responsible for getting C.B. ready for school.  It was alleged that on both occasions, Coleman climbed into bed next to C.B. before he woke her up and assaulted her while she pretended to be asleep.

¶3    The case proceeded to a jury trial that took place in February 2012, and Coleman was convicted as charged.  Coleman moved for postconviction relief and argued that he was entitled to a new trial because he received ineffective assistance of counsel.  The trial court held a *Machner*[1] hearing and denied Coleman's motion.  We reversed the trial court's decision in *State v. Coleman*, 2015 WI App 38, 362 Wis. 2d 447, 865 N.W.2d 190, and remanded for a second trial.  We concluded, in part, that Coleman's trial counsel was ineffective for failing to question multiple witnesses about C.B.'s allegation that Coleman had ejaculated on her leg, particularly in light of the fact that no male DNA was found

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

on C.B.'s unwashed bedding, unwashed clothes, or on the swabs taken from C.B. *See id.*, ¶44.

¶4 Coleman's second jury trial took place in April 2016.[2] However, in the interim, C.B. was convicted of two misdemeanors and S.B., C.B.'s stepmother who testified at the first trial about the relationship between C.B. and Coleman, died. The State sought to exclude any evidence of C.B.'s two misdemeanor convictions and sought to read the transcript of S.B.'s testimony from Coleman's first trial. Over trial counsel's objections, the trial court granted the State's motion to exclude any evidence of C.B.'s convictions and permitted the State to read the transcript of S.B.'s prior testimony.

¶5 Coleman was again convicted of both counts of sexual assault, and he was sentenced, to an aggregate sentence of twenty years of imprisonment, composed of ten years of initial confinement and ten years of extended supervision. Coleman moved for postconviction relief, and his motion was denied without a hearing. This appeal followed.

## DISCUSSION

¶6 Coleman argues on appeal that he is entitled to a new trial for three reasons: (1) the trial court erroneously excluded evidence of C.B.'s two misdemeanor convictions; (2) the trial court violated his Sixth Amendment right to confrontation when it permitted the State to read the transcript of S.B.'s testimony

---

[2] The Honorable Thomas J. McAdams presided over Coleman's second trial and sentencing. The Honorable Stephanie Rothstein issued the decision and order denying Coleman's postconviction motion.

3

from his first trial; and (3) he received ineffective assistance of counsel. We address each argument in turn.

### I. C.B.'s Misdemeanor Convictions

¶7 Coleman argues that the trial court erred when it excluded evidence of C.B.'s two misdemeanor convictions because the convictions had a "high likelihood" of being expunged. Coleman likens a pending expungement to a pending appeal and argues that the convictions should not be excluded because a pending appeal does not result in exclusion. However, Coleman, conceded this argument by failing to refute the State's argument in its response brief in his reply brief.[3] *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession). Nevertheless, we conclude that the trial court properly exercised its discretion when it excluded the evidence of C.B.'s two misdemeanor convictions.

¶8 In 2015, C.B. pled no contest to charges of possession of THC and possession of drug paraphernalia[4] and C.B. was sentenced to probation. The State moved to exclude C.B.'s convictions "since [they] did not exist at the time that this occurred" and "given the nature of the crime[s themselves] and the fact that [C.B.] was placed on probation, [they were] charge[s] that could be expunged from her record given her age."[5] The trial court ruled that the evidence of C.B.'s

---

[3] We discuss the specifics of the State's argument below.

[4] Both the marijuana and the drug paraphernalia were found in the home where she was residing with her father and S.B.

[5] At sentencing on the marijuana and drug paraphernalia charges the judge ordered that the convictions be expunged upon successful completion of probation.

convictions would be excluded provided that she testified consistent with her testimony from the first trial. In making its ruling, the trial court found that the convictions were "very minor" and were likely to be expunged after C.B. completed her probation.

¶9      When C.B. subsequently testified to facts that were not included in her testimony from the first trial, trial counsel moved to allow questioning about C.B.'s convictions in order to impeach C.B.'s credibility. The trial court again excluded evidence of the convictions because there was "a very high chance" that the convictions would be expunged and the convictions were low on the scale of "[c]riminal falsely offenses."

¶10      "[A] witness may be asked whether the witness has ever been convicted of a crime … and the number of such convictions" for impeachment purposes. WIS. STAT. § 906.09(1) (2017-18).[6] However, evidence of convictions may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Sec. 906.09(2). Several factors are evaluated in determining whether to exclude evidence of convictions, including the amount of time since the conviction, the rehabilitation of the convicted person, the gravity of the crime, any indications of dishonesty in the crime, the frequency of the convictions, and "[a]ny other relevant factors." Sec. 906.09(2)(a)-(f). A pending appeal "does not render evidence of a conviction … inadmissible." Sec. 906.09(5). "[A]n expunged record of a conviction cannot be … used for impeachment at trial under § 906.09(1)[.]" *State v. Allen*, 2017 WI 7, ¶40, 373 Wis. 2d 98, 890 N.W.2d 245.

---

[6] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶11 "It is within the discretion of the [trial] court to determine whether to admit evidence of prior convictions for impeachment purposes under WIS. STAT. § 906.09." ***State v. Gary M.B.***, 2004 WI 33, ¶19, 270 Wis. 2d 62, 676 N.W.2d 475. "This court will affirm a [trial] court decision to admit evidence of prior convictions if the [trial] court properly exercised its discretion, regardless of whether we would have made the same ruling." ***Id.*** A proper exercise of discretion requires that the trial court base its decision on the relevant facts, apply the proper standard of law, and reach a reasonable conclusion using a demonstrated rational process. ***State v. Bowser***, 2009 WI App 114, ¶9, 321 Wis. 2d 221, 772 N.W.2d 666.

¶12 The record shows that the trial court here considered the proper factors and reached a reasonable conclusion using a rational process when it excluded evidence of C.B.'s two misdemeanor convictions. The trial court considered the gravity of the offenses when it noted that C.B.'s convictions were for "very minor" offenses and were low on the scale of "[c]riminal falsely offenses."[7] The trial court also considered C.B.'s rehabilitation when it looked at her young age and the likelihood that the convictions would be expunged. The trial court then came to the conclusion that the convictions could not be used to impeach C.B.'s credibility. The trial court applied the appropriate factors in WIS. STAT. § 906.09(2) and came to a reasonable conclusion, and we conclude that the trial court properly exercised its discretion.

---

[7] One of the offenses for which C.B. was convicted was a Class C misdemeanor, and the other offense was an unclassified misdemeanor.

¶13 Even considering Coleman's argument that a pending expungement is akin to a pending appeal, we still cannot conclude that the trial court erroneously exercised its discretion. Assuming a pending expungement could be considered like a pending appeal,[8] WIS. STAT. § 906.09(5) does not require the trial court to admit evidence of a conviction that is pending on appeal; the statute merely states that a pending appeal does not automatically make evidence of a conviction inadmissible. In the end, the trial court must still apply the factors found in § 906.09(2) when considering whether evidence of a conviction pending on appeal is admissible, and that is what the trial court did here. Consequently, Coleman's argument fails.

## II. S.B.'s Prior Testimony

¶14 Coleman additionally argues that the trial court violated his Sixth Amendment right to confrontation when it permitted the State to read S.B.'s testimony from the first trial at the second trial because Coleman did not have a fair opportunity to cross-examine S.B. on a "critical issue" at the first trial.

¶15 During the trial, the State sought to admit S.B.'s prior testimony from the first trial to provide S.B.'s observations of what S.B. considered an inappropriately close relationship between Coleman and C.B. The State argued that S.B.'s testimony was admissible pursuant to WIS. STAT. § 908.045(1) and noted that S.B. met the definition of unavailable found in WIS. STAT.

---

[8] We agree with the State's argument that considering a pending expungement like a pending appeal would read language into the statute, *see State v. Kozel*, 2017 WI 3, ¶39, 373 Wis. 2d 1, 889 N.W.2d 423 ("We will not read into the statute a limitation the plain language does not evidence." (citation omitted)), and we decline to recognize that a pending expungement should be considered like a pending appeal.

§ 908.04(1)(d) because S.B. had died since the time of the first trial. Trial counsel objected to the admission of S.B.'s testimony on the basis that the State should have addressed this topic during motions *in limine* before trial, trial counsel was unaware that the State would seek to read the transcript of S.B.'s prior testimony, and there was not a fair cross-examination of S.B. at the first trial. The trial court ultimately found that the testimony was admissible under § 908.045(1) and permitted the State to read the transcript of S.B.'s prior testimony.

¶16    Coleman argues that based on this court's conclusion in his first appeal that trial counsel was ineffective in cross-examining S.B, he did not have a fair opportunity to cross-examine S.B. He argues that, therefore, the admission of S.B.'s prior testimony in the second trial violated his Sixth Amendment right to confront S.B. because he did not have a fair opportunity to cross-examine S.B. on the critical issue of C.B. telling S.B. that Coleman had ejaculated on her leg. He points to our prior decision's conclusion that his trial counsel in his first trial was ineffective for, in part, failing to question witnesses about C.B.'s statements to them that she had a "wet, sticky substance" on her thigh after the second assault as support that Coleman did not have a fair opportunity to cross-examine S.B. As Coleman argues in his reply brief, his argument challenges the lost opportunity to cross-examine S.B. on testimony that was not, but should have been, elicited from S.B. during the first trial and the State "entirely misses the point" when the State discusses what S.B. actually said in her testimony.

¶17    "A Confrontation Clause violation does not result in automatic reversal, but is subject to harmless error analysis." ***State v. Deadwiller***, 2013 WI 75, ¶41, 350 Wis. 2d 138, 834 N.W.2d 362. "[A]n error is harmless if the beneficiary of the error proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ***Id.*** (citation omitted).

In other words, we ask whether "the jury *would* have arrived at the same verdict had the error not occurred." *Id.* (citation omitted). Several factors guide our analysis including:

> the frequency of the error; the importance of the erroneously admitted evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; whether the erroneously admitted evidence duplicates untainted evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case.

*Id.* (citation omitted).

¶18    Assuming it was error to admit S.B.'s prior trial testimony, we conclude that any error was harmless. The critical issue that Coleman argues was never explored during cross-examination of S.B. in the first trial was ultimately explored and developed at the second trial. Trial counsel questioned C.B. regarding her allegation that there was a "wet, sticky substance" on her thigh after the second assault, and C.B. responded that she could not recall any wet, sticky substance. By contrast, several other witnesses, including C.B.'s school guidance counselor, the pediatric nurse practitioner who conducted C.B.'s physical exam, and the detective who led the police investigation, testified that C.B. told them that there was a "wet, sticky substance" on her thigh after the second assault.

¶19    A forensic DNA analyst also testified regarding the DNA testing conducted on C.B.'s unwashed bedding and clothing that were recovered during the police investigation and the DNA testing conducted on various swabs taken from C.B. during her physical exam that occurred the day after the second assault. The analyst testified that she tested for the "presence of fluids or biological material," she "[did] testing for the presence of semen" and used "an alternate light which is a little bit like a black light" to look for "specific stains on the

9

clothing." She testified that no male DNA was detected on any of the items tested. Trial counsel followed up on this testimony and specifically asked on cross-examination if the analyst found any of Coleman's DNA on C.B.'s bedding or body.

¶20 Given the amount of testimony on this topic from other witnesses, any testimony that S.B. would have contributed would have been cumulative of evidence already presented to the jury and S.B.'s testimony would not have significantly added to the proof on this point. *See Deadwiller*, 350 Wis. 2d 138, ¶41 (listing corroboration, duplication, and importance of the evidence as factors to consider). The jury heard from three witnesses that C.B. claimed to have a "wet, sticky substance" on her thigh after the second assault and heard from the analyst that Coleman's DNA was not found anywhere. We, accordingly, conclude that any assumed error in the admission of S.B.'s prior testimony was harmless because "the jury *would* have arrived at the same verdict had the error not occurred." *Id.* (citation omitted).

### III. Ineffective Assistance of Counsel

¶21 Coleman also argues that his trial counsel was ineffective for (1) failing to object to "numerous instances of objectionable hearsay testimony" from Detective Ann Golombowski and F.M.; (2) failing to object to F.M.'s testimony about how he felt when C.B. told him that Coleman assaulted her; and (3) failing to object to the prosecutor's statement in closing arguments that Coleman had been stripped of the presumption of innocence. We decline to address these arguments as undeveloped and conceded.

¶22 While Coleman developed an argument in his opening brief regarding why the "objectionable hearsay testimony" from Detective

Golombowski and F.M. were not admissible under the hearsay exception for prior consistent statements, he failed to develop arguments for the two other hearsay exceptions, namely the excited utterance exception and the residual exception, addressed by the trial court below until his reply brief. "It is a well-established rule that we do not consider arguments raised for the first time in a reply brief." *See* **Bilda v. County of Milwaukee**, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661. Moreover, "[f]ailure to address the grounds on which the [trial] court ruled constitutes a concession of the ruling's validity." **Sands v. Menard**, 2016 WI App 76, ¶52, 372 Wis. 2d 126, 887 N.W.2d 94, *aff'd*, 2017 WI 110, 379 Wis. 2d 1, 904 N.W.2d 789.

¶23 Coleman also completely failed to develop his additional arguments that he received ineffective assistance of counsel as it relates to counsel's failure to object to statements by F.M. about how he felt and the prosecutor's statements in closing arguments. He raises both of these in his introduction as arguments that will be addressed in more detail below, but he fails to develop any detail on either argument. Indeed, he fails to even make mention of either F.M.'s or the prosecutor's statements in his argument on prejudice and he fails to mention either argument for ineffective assistance of counsel in his reply brief. "We cannot serve as both advocate and judge." **State v. Pettit**, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). We, therefore, decline to address Coleman's argument for ineffective assistance of counsel.

## CONCLUSION

¶24 We conclude that the trial court did not err when it excluded evidence of C.B.'s two misdemeanor convictions and that any assumed error in admitting S.B.'s prior testimony was harmless. We further decline to address

11

Coleman's argument that he received ineffective assistance of counsel. We, therefore, affirm his judgment of conviction and the denial of his postconviction motion seeking a new trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.